# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH DESYLVA,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Case No.  1:23-cv-01661-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND DIRECTING CLERK OF THE COURT TO CLOSE THIS ACTION<br><br>(ECF Nos. 12, 14, 15) |

## I.

## INTRODUCTION

Elizabeth Desylva ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the administrative law judge ("the ALJ") erred by failing to include mental limitations in her residual functional capacity ("RFC") and by not expressly addressing why such limitations were not included and by failing to evaluate a third-party function report.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 7, 9, 11.)

1

1    For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

**A.    Procedural History**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 1, 2021. (AR 88.) Plaintiff's applications were initially denied on November 19, 2021, and denied upon reconsideration on March 30, 2022. (AR 115-19, 122-26.) Plaintiff requested and received a hearing before Administrative Law Judge Kathryn Bridges ("the ALJ"). Plaintiff appeared for a video hearing on December 16, 2022. (AR 46-71.) On January 4, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 28-40.) On June 13, 2023, the Appeals Council denied Plaintiff's request for review. (AR 14-16.)

**B.    The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, January 4, 2023:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.
2. Plaintiff has not engaged in substantial gainful activity since June 30, 2021, the alleged onset date.
3. Plaintiff has the following severe impairments: diabetes mellitus, vertigo, and obesity.
4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
5. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except never climb ladders, ropes, or scaffolds; no more than occasional exposure to extreme cold; and cannot operate a motor vehicle as an occupational requirement, nor work safely around extraordinary hazards, such as unprotected heights or dangerous machinery (having exposed moving parts or requiring agility in order to evade).
6. Plaintiff is capable of performing past relevant work as a Typist, Receptionist, Library-

|   |   |
|---|---|
| | Technical Assistant, Registration Clerk, Administrative Clerk, and Accounts Payable Clerk.  This work does not require the performance of work-related activities precluded by her residual functional capacity. |
| 7. | Plaintiff has not been under a disability, as defined in the Social Security Act, from June 30, 2021, through the date of this decision. |

(AR 33-40.)

## III.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not,

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

3

proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1 step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical
2 testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,
3 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by failing to include any analysis of Plaintiff's mental limitations in developing the RFC and by not addressing the third-party testimony of her son.[5]

### A.   Whether the ALJ Considered Plaintiff's Mental Impairments at Step 4

Plaintiff argues that the ALJ found her mental impairments to be mild at step 2 and therefore not severe but failed to account for any mental limitations in the RFC or explain why such limitations were not included. (Pl.'s Brief ("Mot.") 11, ECF No. 12.)

While Plaintiff cites to cases in which the ALJ failed to consider or did not make clear that a claimant's mild mental limitations were considered in developing the RFC (see Mot at 10-11), the Court finds that this case is not similar.  Here, the ALJ expressly addressed Plaintiff's mental limitations in discussing the evidence and found that her testimony regarding such limitations was not credible.  The ALJ also considered the psychological consultant's opinions regarding mental impairments in developing Plaintiff's RFC.

Plaintiff argues that the ALJ's analysis is devoid of any mental function limitation and her articulated assessment was insufficient. (Mot. at 14.)  However, the ALJ considered that Plaintiff has been treated for anxiety and stress since January 2021 and reported difficulty with concentration and following instructions. (AR 38, 356.)  The ALJ also considered that on January 26, 2021, Plaintiff reported that she did not have any psychological issues or psychological symptoms and was not compliant with her medications because she does not take it seriously and wanted permanent disability. (AR 38, 1F 30-31.)

---

[5] The Court has read and considered all arguments presented in the moving, opposition, and reply papers and only addresses those necessary for decision of the instant appeal.

Specifically, the records note that Plaintiff stated she has been prescribed psych medication in the past and "I don't take the medications." "I don't take it seriously." The record notes that no outpatient medications have been marked as taking for the January 26, 2021, encounter. Plaintiff stated she "wants permanent disability" and "right now I don't have psychiatric symptoms." (AR 374.) She stated her mood was "okay" and sleep was "fine" and concentration was "fair." (AR 374-75.) Plaintiff reported she was working from home Monday through Friday, 10 hours a day and functioning. Plaintiff was noted to be calm and coherent. She denied any suicidal ideation or psychotic symptoms. Responsibility and impulse control were good, and Plaintiff had insight and clear sensorium. (AR 375.)

The ALJ also noted that Plaintiff alleged experiencing delusions and hallucinations and accusing others of doing things that did not happen but found this was not supported by the treatment notes and during the consultative examination. (AR 38, 61.) The ALJ found that these findings were not consistent with Plaintiff's allegations of total disability. (AR 38.) The ALJ could reasonably find that Plaintiff's statements discredited her testimony regarding the severity of her psychiatric symptoms. See Robbins, 466 F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse credibility finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's testimony and his own conduct, or on internal contradictions in that testimony).

The ALJ also considered an October 4, 2021, psychological consultative examination with Dr. Zanutto. (AR 38, 492-99.) Plaintiff alleged symptoms related to anxiety and depression and reported panic attacks, loss of interest, sleep disturbances and lack of motivation. (AR 38, 492.) Dr. Zanutto noted that Plaintiff presented herself in an emotional manner. (AR 494.) However, on examination, Plaintiff was alert and oriented, speech was normal for tone, rate, and prosody. Plaintiff's mood was good, and affect was congruent. Attention and concentration were intact for most part during the interview and assessment. Plaintiff's fund of knowledge and memory for recently learned information appeared intact. Her ability for abstraction appeared intact and she was able to interpret proverbs. Her insight and judgment were intact, and her thought process

1 appeared linear and goal oriented.  Plaintiff denied hallucinations or delusions.  (AR 38, 494.)
2 Testing did not indicate any deficits in cognitive functioning or any possible memory impairments.
3 (AR 496, 498.)   Based on this examination, Plaintiff was diagnosed with generalized anxiety
4 disorder, provisional.  (AR 38, 498.)

5 The ALJ also considered the opinions of the state agency consultants who found that
6 Plaintiff had no more than mild mental limitations finding their opinions persuasive as they were
7 supported by the medical evidence and consistent with the findings of the psychological
8 consultative examiner.  (AR 38.).  On November 11, 2021, at initial review, Dr. Kaspar, an agency
9 consultant reviewed the record and found that Plaintiff had no significant limitations.  (AR 80.)  On
10 reconsideration, Dr. Sen, an agency consultant, reviewed the record and concurred that Plaintiff had
11 no significant limitations.  (AR 99.)

12 The ALJ considered the opinion of consultative examiner Dr. Zanutto and found that the
13 opinion is persuasive as it is supported by the treatment notes in which Plaintiff denied any
14 psychological symptoms and is consistent with examination findings.  (AR 39, 374, 492-99.)  While
15 subjective symptom testimony cannot be discredited solely because it is not fully corroborated by
16 objective medical evidence, the medical evidence is still a relevant factor in determining the severity
17 of a claimant's symptoms and their disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th
18 Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

19 Plaintiff is essentially arguing that her subjective complaints should have been considered
20 and incorporated into the RFC.  However, the Court finds that the ALJ provided clear and
21 convincing reasons supported by substantial evidence to discount Plaintiff's symptom complaints.
22 Plaintiff has not challenged the ALJ's finding that the intensity, persistence and limiting effects of
23 these symptoms are not entirely consistent with the medical evidence and other evidence in the
24 record (AR 37), and has therefore waived the issue, Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th
25 Cir. 2014).

26 Further, while Plaintiff argues that the RFC is not supported by substantial evidence, the ALJ
27 is not required to include limitations based on evidence that has been properly discounted.
28 Osenbrock, 240 F.3d at 1165; Batson, 359 F.3d at 1197; Andrews, 53 F.3d at 1043.  The Court

finds that the ALJ discussed the evidence of Plaintiff's mental impairments and substantial evidence supports the absence of mental limitations in the RFC.

### B. Whether the ALJ Erred in Failing to Consider Third-Party Function Report

Plaintiff also contends that the ALJ erred by failing to consider the third-party function report submitted by her son. (Mot. at 18-20.)

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Wilson v. Berryhill, No. 17-cv-05385-PJH, 2018 WL 6421874, at *12 (N.D. Cal. Dec. 6, 2018). Germane reasons must also be specific. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

Nevertheless, even if the ALJ fails to provide germane reasons for rejecting lay witness testimony, such error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). More specifically, the Ninth Circuit has held an ALJ's error in failing to explain his reasons for disregarding lay testimony is harmless where the reasons for rejecting a claimant's symptom testimony apply equally to third-party lay witness testimony. Molina, 674 F.3d at 1115; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on the basis that they were merely repeating the claimant's statements,

where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother); cf. Stout, 454 F.3d at 1055–56 (explaining "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") As the Court previously noted, Plaintiff bears the burden of showing that the error is not harmless. Shinseki, 556 U.S. at 409.

On August 11, 2021, Plaintiff's son, Blaine Desylva, submitted a third-party function report addressing Plaintiff's impairments. (AR 267-74.) Mr. Desylva stated that his mother suffers from depression and anxiety which affect her daily life making it hard for her to get things done. (AR 267.) Plaintiff gets up and cooks breakfast for the household and keeps busy doing chores and reading throughout the day. She often has trouble staying out of bed and doing daily tasks. She has trouble sleeping and he will often find her awake in the early hours of the morning. (AR 268.) Plaintiff often stays in the clothes she sleeps in and stays in bed. She sometimes stays indoors for days and does not bathe as often, and her hair is often messy and not brushed. She needs someone to watch her diet because of her blood sugar. (AR 268.)

Plaintiff often needs reminders to bathe or groom at the start of the day. She forgets her medication and needs to be reminded. She makes eggs every morning, but often her husband will cook for her. She will spend ten to twenty minutes cooking. Plaintiff will usually spend a few hours doing basic household tasks, like dishes, trash, laundry, but sometimes waits for days or someone will help her. But she is inconsistent and leaves the house in disarray and needs verbal encouragement or physical help with tasks. (AR 269.)

Plaintiff lacks motivation and is not able to stay on her feet too long. She does not like to leave the house alone due to her anxiety and worry that something bad will happen. She is afraid to drive. She shops once or twice a week for multiple hours for groceries and household supplies. Plaintiff is able to pay bills and count change but cannot handle a checking account or use a checkbook or money order. She is absent minded and often forgets dates and appointments. (AR 270.)

Plaintiff watches television during the day, often falling asleep or losing interest and reads and cooks, but not as often because she cannot focus. She has trouble focusing on one thing for long. She will talk with family members and video chats with her grandson several times a week. (AR 271.) She has problems getting along with others and will become confrontational or aggressive for no reason. She has more difficulty interacting with others without conflict and has distanced herself more. Her conditions affect lifting, squatting, bending, walking, kneeling, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. She can pay attention for a few minutes and does not finish what she starts. She needs to reread instructions or have someone read them and explain them to her. She does not follow spoken instructions well and they must be repeated multiple times. (AR 272.)

She does not get along with authority figures well and has been fired for fighting with coworkers. She does not handle stress well and gets easily overwhelmed. She handles changes in routine fine. She has irrational worries and fears. (AR 273.)

Here, it is undisputed that the ALJ did not address the lay witness testimony. Although Plaintiff argues that the failure to address the testimony was harmful because the witness stays with his mother and drives her around (Mot. at 19-20), a review of Mr. Desylva's statements regarding Plaintiff's activities and symptoms shows that it largely mirrors Plaintiff's testimony, although he indicates that she does more activity than Plaintiff alleges. For example, Plaintiff alleges she gets up and eats breakfast and does not cook (AR 277, 278), while her son indicates that she cooks breakfast for the family every morning (AR 269). Plaintiff states that the only chores she does is washing dishes once a day for twenty minutes and putting her own clothes in the washer (AR 278), while her son states she does basic household tasks like dishes, trash, and laundry for a few hours (AR 269). Plaintiff alleges that she goes grocery shopping once a week for about an hour (AR 279), while her son states that she shops for groceries and household supplies one to two times per week, and it takes her multiple hours to shop (AR 270). Plaintiff states that she does not watch television very often (AR 280), while her son states that she watches television most days but will fall asleep or lose interest (AR 271).

Although Mr. Desylva did note that Plaintiff has difficulty understanding (AR 272), the

11

1  ALJ specifically found that the consultative examination showed that Plaintiff fund of knowledge
2  and memory for recently learned information was intact and abstraction was intact and she was
3  able to interpret proverbs. (AR 38.) Further, all consultative psychologists, whose opinions the
4  ALJ found to be persuasive, found no significant limitation in Plaintiff's ability to accept
5  instructions or perform work activities without special or additional supervision. (AR 38-39, 80,
6  99-100, 498-99.)

7  As the Court previously discussed, the ALJ provided clear and convincing reasons to
8  discount Plaintiff's symptom testimony and these same reasons would apply to the lay witness
9  testimony. See Valentine, 574 F.3d at 694; Lewis, 236 F.3d at 512; Dodrill, 12 F.3d at 918.

10  In light of the Court's conclusion that the ALJ provided clear and convincing reasons
11  supported by substantial evidence for discounting Plaintiff's symptom testimony, and because the
12  lay witness testimony largely mirrors Plaintiff's symptom complaints, the Court concludes that
13  no reasonable ALJ, when fully crediting Mr. Desylva's testimony, could have reached a different
14  disability determination. The Court therefore finds any error to be harmless in light of the proper
15  rejection of Plaintiff's underlying testimony. See Molina, 674 F.3d at 1122; Stout, 454 F.3d at
16  1055–56.

17  The Court finds that to the extent that the ALJ erred by failing to address the lay witness
18  testimony of Mr. Desylva such error was harmless.

19  ///
20  ////
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Elizabeth Desylva.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:     **August 7, 2024**

UNITED STATES MAGISTRATE JUDGE